# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANESSA NIXON, | No. 4:20-CV-00404 |
| Plaintiff, | (Judge Brann) |
| v. | |
| FAMILY DOLLAR STORES OF PENNSYLVANIA, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### MAY 20, 2021

Plaintiff Vanessa Nixon initiated this personal-injury suit against Defendant Family Dollar Stores of Pennsylvania, LLC on October 9, 2019 for injuries suffered while inside a Family Dollar store located in Williamsport, Pennsylvania.[1] Family Dollar removed this case from the Court of Common Pleas of Philadelphia County to the United States District Court for the Eastern District of Pennsylvania on November 4, 2019.[2] The matter was subsequently transferred from the Eastern District to this Court in March 2020.

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a); Nixon raises a sole negligence claim under Pennsylvania law. On

---

[1] Doc. 1; Doc. 18.
[2] Doc. 1.

October 21, 2020, Family Dollar filed a motion for summary judgment seeking dismissal of Nixon's claims.[3]

The motion is now ripe for disposition; for the reasons that follow, Family Dollar's motion is denied.

### I. STANDARD OF REVIEW

I begin my analysis with the standard of review which undergirds summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[5] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[6] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[7]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of

---

[3] Doc. 49.
[4] Fed. R. Civ. P. 56(a).
[5] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[6] *Clark*, 9 F.3d at 326.
[7] *Id*.

proof that would apply at the trial on the merits."⁸  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."⁹  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."¹⁰  "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"¹¹

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."¹²  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

⁸ *Liberty Lobby, Inc.*, 477 U.S. at 252.
⁹ *Id.*
¹⁰ *Id.*
¹¹ *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
¹² *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[13]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[14] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[15]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[16] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[17] On a motion for summary judgment,

---

[13] *Id*.
[14] *Liberty Lobby*, 477 U.S. at 250.
[15] Fed. R. Civ. P. 56(c)(1).
[16] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).
[17] Fed. R. Civ. P. 56(e)(2).

"the court need consider only the cited materials, but it may consider other materials in the record."[18]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[19] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[20] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[21]

## II. UNDISPUTED FACTS

### A. The Accident

On April 18, 2018, Nixon went to the Family Dollar store located in Williamsport, Pennsylvania to purchase a birthday card.[22] After arriving at the store, Nixon stopped to chat briefly with Cherill Green, a friend who was also shopping at the Family Dollar.[23] While looking for the card section, Nixon took five or six steps down the party aisle when she slipped and fell on a large puddle.[24] Nixon testified that she was "scanning the aisle" as she walked and that she did not look at the floor prior to her fall.[25]

---

[18] Fed. R. Civ. P. 56(c)(3).
[19] *Liberty Lobby*, 477 U.S. at 249.
[20] *Id*.
[21] *Id*. at 249-50 (internal citations omitted).
[22] Doc. 49 at ¶¶ 1, 2; Doc. 51-1 at 101:15.
[23] Doc. 52-1 at 105:15-19.
[24] *Id*. at 106:4-15.
[25] Doc. 49 at ¶ 3; Doc. 51-1 at 111:11-25.

The puddle was approximately three feet long and several inches wide.[26] Nixon testified that the puddle was clear, although she did not recall where it came from.[27] After Nixon fell, she was approached by Green, who called 911.[28] While on the phone with 911, Green ran to the next aisle over and saw a Family Dollar employee mopping.[29] Green testified that she saw the employee then retrieve a wet-floor sign, place it in the aisle in which she was mopping, and then came to attend to Nixon.[30]

Beyond this, the parties contest a number of facts surrounding the incident. Disputed facts include whether a wet-floor sign was present in the party aisle when Nixon fell,[31] the amount of time Nixon spent in the store prior to falling,[32] as well as where certain employees were located in the store prior to and at the time of the accident.[33] The parties also dispute the source of the puddle and whether employees had actual or constructive notice of the puddle prior to Nixon's fall.

### B. Family Dollar's Video System

The Williamsport Family Dollar had a video security system in operation during April 2018.[34] The system's cameras covered various locations within the

---

[26] Doc. 49 at ¶ 4; Doc. 49-2 at 112:5-6.
[27] Doc. 49-2 at 114:16-115:2.
[28] Doc. 52-6 at 33:11-13
[29] *Id.* at 33:23-34:4.
[30] *Id.* at 34:4-9.
[31] Doc. 49-2 at 136:15-19; Doc. 52-2 at 43:15-24.
[32] Doc. 49-3 at 54:7-10; Doc. 51 at ¶ 18.
[33] Doc. 52-2 at 18:8-10, 19:6-17, Doc. 52-2 at 28:1-3; Doc. 52-5 at 75:3-6.
[34] Doc. 52-3 at 41:3-5.

store, including the front and rear entrances, the cash registers, the health and beauty aisles, and perhaps the cooler and freezer aisle or the chemical air-freshener aisle.[35] It is not disputed that there were no cameras covering the party aisle or the entryways to the party aisle.

After video is recorded into the system, it is stored on a DVR.[36] Video can be copied and saved from the DVR if necessary, however, all videos in the DVR system are automatically deleted thirty days after they are initially recorded.[37] To copy (and save) videos, a person may insert a CD or DVD into the security system at the store in which the system is installed and record the relevant footage.[38] Store managers are trained to save footage from the DVR system.[39] Assistant store managers who have been trained by store managers are likewise able to record and save footage.[40]

Family Dollar has a policy of retaining footage when specifically requested to do so.[41] For example, Family Dollar has copied and saved footage following requests by the police department, the store's loss-prevention department, as well as Family Dollar's insurance company.[42] It is undisputed that Family Dollar

---

[35] *Id.* at 40:20-41:2.
[36] *Id.* at 41:6-8.
[37] *Id.* at 41:10-20.
[38] *Id.* at 42:3-8.
[39] *Id.* at 42:10-19.
[40] *Id.*
[41] *Id.* at 43:11-15.
[42] *Id.* at 43:18-22.

received a letter from Nixon's attorney dated April 19, 2018 (the day after the accident) formally asking Family Dollar to retain and save all surveillance footage from that day.[43]

For some reason, no footage from April 18, 2018 was ever saved. All video surveillance from that date was subsequently destroyed approximately thirty days later. The only explanation offered is that of Tina Kerstetter, the store manager on duty the date of the accident. At Kerstetter's deposition, she testified that she was shown the letter by another employee and was told "that our lawyer would probably be contacting us."[44] Consequently, Kerstetter stated that "[w]e just sat back and wait."[45]

## III. DISCUSSION

Nixon asserts a single claim for negligence against Family Dollar. "In any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff."[46] "The mere occurrence of an accident does not establish negligent conduct."[47] "Rather,

---

[43] Doc. 52-5 at 115:21-116:8; Doc. 52-4. The letter, in bold font, stated that it would "serve as formal notice to preserve ALL VIDEO RECORDINGS AND PHOTOGRAPHS from April 18, 2018." *Id.*
[44] Doc. 52-5 at 116:1-7.
[45] *Id.* at 116:7-8.
[46] *Farabaugh v. Pa. Turnpike Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006) (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).
[47] *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998) (citations omitted).

the plaintiff has the burden of establishing, by a preponderance of the evidence," all four of the elements described above.[48]

Family Dollar seeks dismissal of Nixon's negligence claim on two bases. First, it argues that the puddle was an open and obvious condition and thus that Family Dollar had no duty to warn Nixon of the puddle. Specifically, Family Dollar maintains that the size of the puddle, combined with Nixon's statement that she did not look down at the floor while walking down the aisle, relieves Family Dollar from its duty to warn as a matter of law. Second, and alternatively, Family Dollar contends that Nixon has not presented any evidence showing that Family Dollar had actual or constructive notice of the puddle.

The Court concludes that a genuine dispute of material fact exists regarding the openness and obviousness of the puddle. Because reasonable minds could differ as to whether Nixon should have seen the puddle before slipping on it, the Court determines that summary judgment is inappropriate. Moreover, the Court finds that a genuine dispute of material fact exists regarding the question of notice. Because Family Dollar spoliated the video footage from April 18, 2018, the Court finds it appropriate to sanction Family Dollar with a permissive adverse inference on the question of notice. Because this creates a genuine dispute of material fact, Family Dollar's motion on this issue is denied.

---

[48] *Id.* (citations omitted).

## A. Open and Obvious Condition

Under Pennsylvania law, landowners owe a special duty of care to invitees pursuant to the Restatement (Second) of Torts § 343.[49] Section 343 holds that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Section 343A clarifies, however, that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is *known or obvious* to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."[50] "A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'"[51] "The question of whether a danger was known or obvious is usually a question of fact for the jury."[52] A court

---

[49] *McKenzie v. Cost Bros., Inc.*, 409 A.2d 362, 364 (Pa. 1979) ("This Court has expressly adopted sections 384 and 343 of the Restatement [(Second)] of Torts." (citations omitted)).
[50] Restatement (Second) of Torts § 343A; *see also Atkins v. Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 104 (Pa. 1980) ("[T]he law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee." (internal quotation marks and citations omitted)).
[51] *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citations omitted).
[52] *Id.* at 124.

may decide this question, however, where "reasonable minds could not differ as to the conclusion."[53]

Family Dollar argues that the size of the puddle, combined with Nixon's statement that she failed to look down at the floor while walking down the aisle, sufficiently establishes that the puddle was an open and obvious condition. Family Dollar maintains that "any reasonable person in [Nixon's] position exercising 'normal perception, intelligence, and judgment' would have both seen the liquid on the floor, and recognized the potential risk posed by such a condition."[54] Consequently, Family Dollar contends that it had no duty to warn Nixon about the puddle.

In support, Family Dollar cites *Campisi v. Acme Markets*[55] and *Graham v. Moran Foods, Inc.*[56] In *Campisi*, the plaintiff was walking through the aisle of a shopping market when she tripped over a blind employee's cane.[57] The Superior Court of Pennsylvania affirmed a directed verdict for the defendant shopping market on the basis that it had no duty to warn customers that a blind employee worked there.[58] In doing so, *Campisi* ruled that the fact that a store may have a

---

[53] *Id.*
[54] Doc. 50 at 12 (quoting *Carrender*, 469 A.2d at 123-24).
[55] 915 A.2d 117 (Pa. Super. 2006).
[56] 2012 WL 1808952 (E.D. Pa. May 18, 2012).
[57] 915 A.2d at 118.
[58] *Id.* at 120-21.

- 11 -

blind (or otherwise handicapped) employee who may need special equipment is an open and obvious condition.[59]

*Campisi* also noted that the plaintiff was partially responsible for her injuries because she had admitted that she was not looking at where she was going and because it is reasonably foreseeable for dangers to exist when one is exiting a shopping aisle.[60] The plaintiff claimed that she had been justifiably distracted by products stocked in the aisles and had not looked down prior to turning the corner.[61] Rejecting this argument, however, *Campisi* stated that "just as drivers are not relieved of responsibility for accidents if they are distracted by billboards, customers are not relieved of the responsibility of watching for obstacles while they walk, even if they are distracted by sales displays."[62]

In *Graham*, a plaintiff shopping at a grocery store tripped over a pallet while stepping backwards.[63] The court granted a motion for summary judgment against her on the basis that the pallet was an open and obvious condition.[64] Specifically, *Graham* noted that a reasonable shopper would have looked to the floor space behind her before walking.[65] And *Graham* admonished that, just as customers "must constantly be on alter when exiting a grocery store aisle," they should

---

[59] *Id.* at 121.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] 2012 WL 1808952 at *1.
[64] *Id.* at *4.
[65] *Id.*

likewise "exercise similar or, perhaps, more caution, when taking steps backwards with a shopping cart."[66]

However, courts have repeatedly found that the question of whether a plaintiff should have known about a certain dangerous condition is reserved for the jury unless reasonable minds cannot differ as to the plaintiff's negligence.[67] As a result, it is generally inappropriate to grant summary judgment when factual disputes exist regarding the obviousness of a given condition. This is true even where a plaintiff has admitted that they were distracted or were not looking where they were going.[68]

Here, it is clear that reasonable minds could differ regarding the obviousness of the puddle on which Nixon slipped. While Nixon has testified that she was distracted and looking at shelves within the aisle, the question of whether Nixon would have been able to see the puddle had she been more attentive cannot be

---

[66] *Id.*
[67] *E.g.*, *Devlin v. Home Depot USA, Inc.*, 2013 WL 6835409, at *4-5 (M.D. Pa. Dec. 23, 2013) (finding summary judgment inappropriate where reasonable minds could differ as to whether a forklift was sufficiently obvious); *Collie v. Wal-Mart Stores East, L.P.*, 2017 WL 1243168, at *6-7 (M.D. Pa. Feb. 1, 2017) (denying a motion for summary judgment where a plaintiff tripped over a curb where a genuine dispute existed regarding the obviousness of the curb); *Lissner v. Wal-Mart Stores East, L.P.*, 2009 WL 499462, at *3 (W.D. Pa. Feb. 27, 2009) ("[T]he location of the post precludes a determination that any tripping hazard it created was obvious as a matter of law."); *Brownlee v. Home Depot U.S.A., Inc.*, 2020 WL 61947405, at *5 (Pa. Super. Oct. 22, 2020) (finding that the question of whether a plaintiff should have seen a piece of wood on the ground was a question for the jury); *compare Carrender v. Fitterer*, 469 A.2d 120, 124 (Pa. 1983) (holding that a defendant was entitled to a directed verdict because the plaintiff's uncontroverted testimony established that she subjectively knew ice was present (and the dangers it posed) before stepping onto it).
[68] *E.g.*, *Collie*, 2017 WL 1243168 at *3-4; *Lissner*, 2009 WL 499462 at *3; *Brownlee*, 2020 WL 6197405 at *5.

answered conclusively at this stage. Given the clear color of the puddle and the apparent proximity of the puddle to the edge of the aisle, reasonable minds might differ on the question of whether Nixon could reasonably have become aware of the puddle and its attendant dangers. Consequently, Family Dollar's motion for summary judgment on this issue is denied.

      B.     **Notice and Spoliation of Evidence**

Family Dollar next seeks summary judgment on the question of notice, which Nixon is required to show to sustain a negligence claim under § 343 of the Restatement (Second) of Torts.[69] Family Dollar claims that Nixon has not adduced evidence demonstrating that any Family Dollar employee either knew of the puddle or could reasonably have known about the puddle prior to Nixon's fall. Nixon contests Family Dollar's motion on grounds that Family Dollar has spoliated evidence, and that, in any event, Nixon has presented sufficient evidence to create a genuine dispute of material fact.

The Court need not address Nixon's second argument because it finds that Family Dollar has spoliated evidence and will sanction Family Dollar with a permissive adverse inference instruction on notice. Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for

---

[69] Section 343 imposes liability only where the possessor of land "knows, or by the exercise of reasonable care would discover" the dangerous condition.

another's use as evidence in pending or reasonably foreseeable litigation."[70] To resolve a spoliation claim, a court must conduct a two-part inquiry.[71] First, the Court must determine whether a party's conduct constitutes spoliation"[72] Second, "[i]f the Court finds that a party has engaged in spoliation, it must next consider the appropriate sanctions available to redress the situation."[73]

The United States Court of Appeals for the Third Circuit has set forth a four-factor test to evaluate whether a party has spoliated evidence. Under this test, spoliation occurs where: (1) "the evidence was in the party's control"; (2) the evidence is relevant to the claims or defenses in the case"; (3) "there has been actual suppression or withholding of evidence"; and (4) the duty to preserve the evidence was reasonably foreseeable to the party."[74] Further, "a finding of bad faith is pivotal to a spoliation determination" and is decided under the third factor of actual suppression or withholding.[75] Bad faith may be inferred from circumstantial evidence.[76]

All four factors are satisfied here. It is undisputed that Family Dollar controlled the video recordings, and it is evident to the Court that a letter from an

---

[70] *Mosaid Tech. Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (citations omitted).
[71] *McCann v. Kennedy Univ. Hosp., Inc.*, 2014 WL 282693, at *4 (D.N.J. Jan. 24, 2014).
[72] *Id.* (citing *Lucia v. McClain & Co., Inc.*, 2013 WL 4517976, at *1, 8 (D.N.J. Aug. 23, 2013).
[73] *McCann*, 2014 WL 282693, at *4 (citations omitted).
[74] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citations omitted).
[75] *Id.* at 79.
[76] *E.g.*, *Orion Drilling Co., LLC v. EQT Production Co.*, 826 Fed. Appx. 204, 217 (3d Cir. Aug. 28, 2020)

attorney requesting that Family Dollar save footage sent the day after a slip-and-fall occurred is sufficient to establish a reasonable duty to preserve that footage.[77] While the cameras may not have shed light on the party aisle or the circumstances of Nixon's fall, any footage from the cameras would certainly be relevant to proving (or disproving) constructive notice. For example, the footage might have shown whether Watts was in fact at the register prior to Nixon's fall, as well as when the wet-floor sign was ultimately placed in the party aisle (if the sign was retrieved from a location under surveillance).

Finally, it seems clear that Family Dollar's failure to save this evidence constitutes bad faith. Family Dollar was put on notice *the day after* Nixon was injured and was explicitly asked to save footage from the day prior. Kerstetter acknowledged that it appeared Family Dollar's legal team would be involved and yet decided it would be appropriate to sit back and wait. There is simply no justification for Kerstetter's failure to preserve this evidence, which she was trained and required to do pursuant to Family Dollar's video-retention policy. Given this, the Court must conclude that Family Dollar has improperly spoliated evidence.

The Court now must decide the appropriate sanction to apply. The "key considerations" in determining what type of sanction is appropriate are: "(1) the

---

[77] *Bruno v. Bozzuto's, Inc.*, 850 F. Supp. 2d 462, 469 (M.D. Pa. 2012) ("[A] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." (citing *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994))).

degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."[78]

The Court concludes that a permissive adverse inference on the issue of notice is an appropriate sanction. Family Dollar's fault in letting the footage be destroyed is notable given that they were put on notice the day after the accident that litigation would soon follow. The prejudice against Nixon is also substantial; while it is impossible to know what was contained on the videos, it is likely that being able to introduce footage of the circumstance's preceding Nixon's fall would be highly probative, whether for or against her case. Lastly, the Court believes a permissive adverse inference avoids substantial unfairness and adequately serves to deter similar conduct in the future.[79]

Given this, the Court cannot grant Family Dollar's motion for summary judgment on the question of notice. Because a jury will be allowed (but not required) to infer notice simply on the basis of Family Dollar's spoliation, summary judgment is no longer appropriate because a genuine dispute of material

---

[78] *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (citations omitted). Pennsylvania previously applied the approach set forth in *Schmid* in a design-defect case. *Schroeder v. Commonwealth of Pa.*, 710 A.2d 23, 27 (Pa. 1998).

[79] *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82-83 (3d Cir. 2019) (referring to a permissive adverse inference instruction as a "lesser sanction").

fact now exists regarding this issue. Additionally, because the Court could deny Family Dollar's motion solely on the basis of its spoliation ruling, the Court deems a discussion of the sufficiency of Nixon's evidence on this question unnecessary. Accordingly, Family Dollar's motion for summary judgment on this issue is denied.

## IV. CONCLUSION

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge